# CHARLESTON.

## CITY OF CHARLESTON, PETITIONER, v. PUBLIC SERVICE COMMISSION.

### Submitted July 6, 1920.     Decided July 8, 1920.

1. PUBLIC SERVICE COMMISSIONS—*Findings of Fact Not Reviewed by Supreme Court of Appeals.*

   Findings of fact by the Public Service Commission, based upon evidence to support them, generally will not be reviewed by this court.  (p. 538).

2. MUNICIPAL CORPORATIONS—*Authority of Municipality to Contract with Public Service Corporations as to Condition of Service and Rates Must Clearly Appear.*

   While there may be circumstances under which a state may, in matters of proprietary right, as distinguished from those phases of the police power relating to the public safety, health and morals, authorize a municipal corporation to establish by an inviolable contract the conditions and rates governing rendition of service by a public service corporation for a definite term, when not grossly unreasonable in duration, yet since the inevitable result of such a contract is to foreclose the right to exercise an important governmental function, the authority so to restrict and limit such state power must clearly and unmistakably appear, and if any doubt shall exist, it is to be resolved in favor of the continuance of the power.  (p. 540).

3. WATERS AND WATER COURSES—*Charter of City of Charleston Does Not Authorize its Contract to Fix Water Rates Barring Future Legislative Action.*

   A general provision in a municipal charter authorizing the city to incorporate in a franchise, granting to a public service

corporation right to use its streets and alleys in the construction, maintenance and operation of its works, "all reasonable additional provisions and conditions * * * for the protection of the public, necessary damage or inconvenience by reason of the construction, maintenance or operation thereof," does not vest the municipal corporation with power to fix water rates or to provide for free water service beyond the control of the state. Any contract so made is permissive only, and is subject to future legislative action.  (p. 541).

4.  CONSTITUTIONAL LAW—*Waters and Water Courses—Franchise Discriminating Against Water Rate Payer May be Annulled by the Commission.*

A provision in a franchise, granted by a municipal corporation to a water company, requiring the latter to furnish free water service to the municipality for its own use, is discriminatory against the rate payer using its service in that community and in favor of the taxpayer, and therefore falls within the condemnation of the Public Service Commission Act, and is subject to annulment by order of the Public Service Commission, without unlawfully impairing contractual obligations.  (p. 542).

(WILLIAMS, PRESIDENT, absent).

Original petition by the City of Charleston for relief from an order of the Public Service Commission relating to the furnishing of water by the West Virginia Water & Electric Company to the city and its inhabitants and to the rates to be charged therefor.

*Relief denied and petition dismissed.*

*Donald O. Blagg, R. S. Spilman* and *Buckner Clay,* for petitioner.

*Geo. W. Johnson* and *Geo. W. McClintic,* for respondents.

LYNCH, JUDGE:

By an order of May 10, 1920, so far as it is involved in this proceeding, the Public Service Commission requires the West Virginia Water & Electric Company, a public service corporation, hereinafter called the Water Company, (1) not to furnish the City of Charleston or any of its inhabitants, persons or corporations therein engaged in any form of business or occupation, water without charging and collecting for such service the rates fixed in the order; (2) to charge the city and from it

collect $32,000 annually for public fire protection, install such additional hydrants and lay such additional water lines as the city may require, and charge therefor by way of compensation for the service an annual rental of 8% of the cost so incurred by the Water Company; (3) to add 20% to the present rates charged for sprinkling systems and private fire hydrants, and (4) to put into operation and effect the meter rates required and authorized by the order and other provisions concerning flat rates, the installation of meters, etc.

The City of Charleston alone complains of this order and bases its claim for relief on two grounds only: (1) Because the Commission in ascertaining the valuation of the Water Company's property for rate making purposes fixed it at too high a figure and twice included the cost of improvement and betterments contemplated, but not completed, by the Water Company on the occasion of a former valuation; and (2) because the order in effect invalidates an inviolable contract consummated in November, 1913, by the grant of a franchise by the city authorities to the Water Company, authorizing it to use and occupy the streets and alleys of the city for the purpose of laying water mains, and the acceptance of the franchise by the Water Company, in consideration for which right and privilege the Water Company bound itself to furnish to the city free water for certain purposes definitely prescribed by the franchise and other water service at specified rates.

The first contention of petitioner is that the present fair value of the Water Company's property for rate making purposes should be fixed at approximately $1,000,000 instead of $1,500,000 as ascertained by the Commission. In support of this contention it is urged that in an order entered on the 20th day of November, 1918, the Commission ascertained the value for rate making purposes to be approximately $1,000,000, and expressly included therein all additions to capital then completed as well as those in contemplation of construction but not completed. That order, however, was admittedly temporary in its nature and did not foreclose further investigation with respect to value. According to the opinion of the Commission filed with the record in the case it was not the intention to include the value of all the extensive improvements and addi-

tions to the plant then in contemplation and since completed, but only the improvements contemplated by the so-called "Fuertes Plan," to the value of $132,600, which the Water Company was expected soon to complete. The opinion further discusses at length the two statistical reports filed with the Commission, one by the Commission's own statistician, the other by an engineer employed by the Water Company and formerly chief engineer for the Commission. The reports differ but little with respect to additions to capital since December 31, 1913, showing $765,329.42 and $774,380.91, respectively. The chief difference, however, occurs in the finding of the present value of the property as of December 31, 1913, the values so fixed being $255,137.72 and $697,613.00, respectively. This divergence is due largely to the method of approach, resulting from the fact that the Water Company had no books or accounts showing the original cost of the property. The Commission finds that its statistician basis his finding upon such information as he was able to obtain from different sources as to the financial history of the company and its organization. The company's engineer, on the other hand, bases his finding as of that date upon a reproduction cost new less depreciation. The Commission ascertains the latter method to be the more equitable where no books exist to show true cost, and especially where the valuation is made under normal conditions when prices of material and labor are not inflated. To the present value as of December 31, 1913, as a basis, the Commission adds the value of additions to capital since that date, as to which the reports substantially agree, and finds the present value as of July 1, 1919, to be $1,471,933.91. Adding to this the sum of $64,096.66, the value of additions to capital between that date and January 1, 1920, the present value as of the latter date would be approximately $1,536,000. Instead of that figure, however, the Commission adopts a value of $1,500,000 as of the 1st day of April, 1920. Counsel for petitioner do not point out any particular error either in method followed or in calculation, and we are not disposed to disturb the Commission's finding in this regard. *Norfolk & Western Ry. Co. v. Public Service Commission,* 82 W. Va. 408; *Mill Creek Coal & Coke Co. v. Public Service Commission,* 84 W. Va. 662, 100 S. E. 557.

The second contention of petitioner is that those parts of the Commission's order which increase the charges specified in the franchise for water furnished for fire protection and which annul the free water service guaranteed to the city impair the obligations of contract in violation of state and federal constitutional provisions. The part of the franchise relating to free water service reads: "In consideration of this franchise and as a further compensation therefor to the City, the said Company shall, during the term and continuance of this franchise, furnish to the City of Charleston free water necessary for its city public use to the extent of one hundred million gallons annually, but not exceeding twelve million gallons in any one month, for the purpose" of sprinkling, flushing and cleaning the streets of the city; for use in and about all public buildings in the city, all offices and grounds owned or leased by it, and all parks and other public places under its control; for the use of the fire department for drilling, testing and cleaning purposes (but not for fire extinguishment, that being covered by the hydrant rentals mentioned above); for the use of the schools of the city, etc. The annulment of the free water service privileges and the increase in fire hydrant rentals will result in a substantial increase of administrative expense to be borne ultimately by the taxpayers residing therein.

That a state may, in matters of proprietary right, as distinguished from those phases of the police power relating to the public safety, health and morals, authorize a municipal corporation to establish by an inviolable contract the conditions and rates under which service shall be rendered by a public service corporation, for a definite term, not grossly unreasonable in point of time, is settled by the Supreme Court of the United States, though the effect of such a contract is to suspend, during the life of the contract, certain of the state's inherent governmental functions. *Vicksburg* v. *Vicksburg Water Works Co.,* 206 U. S. 496; *Columbus Ry., Power & Light Co.* v. *City of Columbus,* 249 U. S. 399. But since the inevitable result of such a contract is to foreclose the exercise of one of the most important functions of government, the police power in its proprietary aspect, the cases uniformly hold that the authority of the municipality so to restrict and limit the power of the state

"must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power." *City of Benwood* v. *Public Service Commission,* 75 W. Va. 127; *Home Telephone & Tel. Co.* v. *Los Angeles,* 211 U. S. 265; *Milwaukee Electric Ry. & Light Co.* v. *Railroad Commission,* 238 U. S. 174; *Puget Sound Traction etc. Co.* v. *Reynolds, etc.* 244 U. S. 574; *State Public Utilities Commission* v. *City of Quincy* (Ill.), 125 N. E. 374; *Sandpoint Water & L. Co.* v. *City of Sandpoint,* 31 Idaho 498. The intent to confer upon a municipality the power to make an inviolable contract of this nature cannot be implied. But when the constitutional or legislative provisions of the state confer clear and express authority upon municipalities to enter into binding contracts with public service corporations, regulating their charges or activities, there is authority holding that the state, through its commission, has no right to interfere, but is deprived of its governmental functions pro tanto during the continuance of the contract term. *Interurban Ry. & Terminal Co.* v. *Public Utilities Commission,* 98 Oh. St. 287; *Cincinnati* v. *Public Utilities Commission,* 98 Oh. St. 320; *Virginia-Western Power Co.* v. *Commonwealth* (Va.), 99 S. E. 723; *Vicksburg* v. *Vicksburg Water Works Co., supra; Columbus Ry., Power & Light Co.* v. *City of Columbus, supra.* For a general discussion of the subject, see note in 3 A. L. R. 730. The principles governing this question are adequately presented in *City of Benwood* v. *Public Service Commission, supre,* and other cases cited, and we are concerned here only with their application.

The charter of the City of Charleston in force when the franchise in question was granted to the Water Company (Chapter 2, Acts 1909), after providing in section 46 that no franchise granting the right of occupancy of any portion of the streets shall be made without requiring the grantee to indemnify the city against all damages caused by the construction, maintenance or operation of such works, contains this additional clause: "All reasonable additional provisions and conditions may be made for the protection of the public, necessary damage, or inconvenience by reason of the construction, maintenance or operation thereof." The provision for free water, it is urged by petitioner, was included in and made part of the franchise as a

consideration for the damage caused the city by the occasional disturbance and excavation of the street improvements by the installation, repair and extension of water mains. As between petitioner and the Water Company this provision doubtless was valid. But does it foreclose the state, through its public service commission, from asserting that such provision constitutes a discrimination against paying patrons of the company within the condemnation of sections 5, 6, 7, and 22, Ch. 15-0, Code? It does so only if the language of the charter just quoted can be said to confer upon the city in clear and unmistakable language authority to divest the state of its reserved power. We cannot find in it or in any other portion of the charter a clear grant of such authority. The language is general and under no construction can it be said to grant in "clear and unmistakable terms" authority to the city to surrender for a term an undoubted power of government. The principle was stated thus by Mr. Justice Moody in *Home Telephone & Tel. Co.* v. *Los Angeles,* 211 U. S. 265, 273: "The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme legislature * * * has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme legislature. The general powers of a municipality, or of any other political subdivision of the state are not sufficient. Specific authority for that purpose is required."

That the free water provision is discriminatory becomes apparent upon first glance. The company is entitled to receive a fair return upon its investment, and when that has been determined after proper investigation, rates must be so adjusted as to yield a net income equivalent to the return fixed. If the city receives its water free of charge, the burden of contributing to the sum named may rest solely or mainly upon the rate payer to the exclusion or partial exoneration of the taxpayer. The former pays not only for the water which he uses, but also for that which the city consumes, the benefit of which accrues to the citizens as a whole and for which they as taxpayers should pay. Service of this character is contrary to the policy of the

Public Service Commission Act.     *Shrader* v. *Steubenville, etc. Traction Co.,* 84 W. Va. 1,   99 S. E. 207, and cases cited.

A distinction is urged, however, between the power of a municipality, through a franchise, to fix rates for itself and its power to fix rates for its inhabitants, and the case, of *People ex rel. South Glen Falls* v. *Public Service Commission,* 225 N. Y. 216, is cited therefor.  This case in turn rests upon *Kings County Lighting Co.* v. *City of New York,* 221 N. Y. 500, affirming without opinion 176 App. Div. 175.  We can see, no valid basis for such distinction.  Upon what theory are franchise provisions which grant to a city water free of charge or upon a stated rate of higher dignity than those guaranteeing to the inhabitants of the city service at a fixed rate?  The former affect the inhabitant in his capacity of taxpayer, while the latter affect him as rate payer, but no solid basis appears for a difference in rule based upon such distinction.  A conclusive answer to this contention is given in *City of Salem* v. *Salem Water, Light & Power Co.,* 255 Fed. 295, 298, where the court says:  "It is said, however, that these cases are to be distinguished, in that here the right to obtain hydrant service at rates not to exceed those specified in the franchise was held by the city in its proprietary capacity.  But as the municipal corporation is but a political subdivision of the state, and exists by virtue of the exercise of the power of the state through its legislative department, it is our opinion that the city has no absolute property right to demand continued hydrant service at a given rate as against the right of the state to modify such rates of service * * *."

But there is an added reason why the franchise in question does not operate to deprive the state of any of its governmental functions.  That instrument clearly indicates that the City of Charleston did not intend by contract to withdraw from the state any of its regulatory power, even assuming that it had authority to do so.  The franchise was granted subsequent to the enactment of the Public Service Commission Act, and with that act in mind, no doubt, the city carefully provided—"that neither the granting of this franchise, nor anything herein contained, shall take from the Public Service Commission of the

State of West Virginia the right to change, revise, regulate and .control the rates hereinafter prescribed, under the law creating said Commission, and any amendment hereafter made thereto." This provision alone is sufficient to disclose a purpose and intent to safeguard the authority of the Commission to act in the premises. It constitutes express authority for the increase in fire protection rates, and the matter of free water service is connected and bound up so intimately with the question of rates as to be substantially part of it, and therefore itself subject to regulatory control.

For these reasons, therefore, we deny the relief sought and dismiss the petition.

*Relief denied and petition dismissed.*