573 S.E.2d 338

STATE of West Virginia ex rel. the
PUBLIC SERVICE COMMISSION
OF WEST VIRGINIA, Petitioner,

v.

TOWN OF FAYETTEVILLE,
MUNICIPAL WATER
WORKS, Respondent

No. 30672.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 2002.

Decided Oct. 11, 2002.

Cassius H. Toon, Richard E. Hitt, Charleston, for the Petitioner.

James A. Dodrill, Glen Allen, for the Respondent.

PER CURIAM:

The Public Service Commission (hereinafter "PSC") seeks a writ of mandamus to compel the Town of Fayetteville, West Virginia, to comply with a June 26, 2001, PSC order regarding reconnection service fees and to comply with statutory mandates regarding liability of landlords for delinquencies of tenants. Upon thorough evaluation of the record and the arguments of counsel, this Court grants the requested writ of mandamus.

I. Facts

On May 3, 2001, Fayetteville adopted an ordinance altering water and sewer fees, to be effective on July 1, 2001. On May 7, 2001, Fayetteville filed the ordinance with the PSC, as required by West Virginia Code § 24–3–5 (1923) (Repl.Vol.2001).[1] Mr. Mi-

1. The PSC apparently attempted to review the ordinance prior to the initiation of the complaint underlying the matter presently before this Court. However, the PSC had not received a sufficient number of protest petitions, as required by W. Va.Code § 24–2–4b (1994) (Repl.Vol.

chael Neff subsequently filed a complaint with the PSC, alleging that his water service had been terminated for delinquent payments and that he had been unfairly charged a $25.00 sewer reconnection fee by the Town of Fayetteville. Mr. Neff had been charged $15.00 for water reconnection and $25.00 for sewer reconnection, despite the fact that his sewer had never been disconnected.[2]

Upon review of Mr. Neff's complaint, the PSC, by order dated June 26, 2001, directed Fayetteville to refund the $25.00 sewer reconnection fee to Mr. Neff, explaining that the practice of charging a reconnection fee for a service which had not been disconnected was inherently unfair and improper.[3] It further ordered that Fayetteville's new ordinance be rejected insofar as it permitted the assessment of a sewer reconnection fee where the sewer service had not been disconnected.

On February 13, 2002, the PSC informed Fayetteville that the ordinance in question also violated West Virginia Code § 8–20–10(c) (2001) (Supp.2002), to the extent that it permitted a landlord to be held liable for a tenant's delinquency.[4] Counsel for Fayetteville responded by letter dated February 26, 2002, and informed the PSC that although its interpretation of the statute was incorrect, a

clarifying amendment would be considered to make it "abundantly clear that the necessary contractual relationship exists not only between the municipally operated public utility and the tenant, but also between the utility and the real property owner."

Counsel for Fayetteville further emphasized that West Virginia Code § 24–2–3 (1983) (Repl.Vol.2001) specifies that the rate making authority exercised by the PSC over other public utilities does not apply to municipal utilities and that the PSC has no authority over rates or charges of a municipality beyond that set forth in West Virginia Code § 24–2–4b. Subsequent to Fayetteville's refusal to comply with the June 26, 2001, PSC order and West Virginia Code § 8–20–10, the PSC filed this writ of mandamus in this Court.

## II. Standard of Review

■ The standard of review for requests for writs of mandamus is clearly established. In syllabus point two of *Stapleton v. Board of Education of County of Lincoln*, 204 W.Va. 368, 512 S.E.2d 881 (1998), this Court explained:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief

2001). The Circuit Court of Kanawha County thereafter issued a writ of prohibition against the PSC to prevent it from reviewing the rate change ordinance, since it had not received enough protest petitions to warrant review.

2. Fayetteville justified the imposition of the sewer reconnection fee on the basis of the following ordinance provision: "Prior to restoration of sewer service which was previously disconnected for non-payment of sewer charges a reconnection charge of $25.00 shall be paid, in addition to any other penalties provided for in this Ordinance."

3. The recommended decision of the administrative law judge first reviewing this matter indicated that there was a typographical error in the ordinance and that the word "sewer" should be changed to the word "water," thus permitting Fayetteville to charge the sewer reconnection fee even where only the water service had been disconnected. As this Court noted in *Harrison Rural Electrification Association, Inc. v. Public Service Commission*, 190 W.Va. 439, 438 S.E.2d 782 (1993), an administrative law judge presents only a recommendation to the PSC. 190 W.Va. at 444, 438 S.E.2d at 787. The PSC may thereafter "on its own motion . . ., review any such matter

and take action thereon. . . ." W.Va.Code § 24–1–9(e) (1979) (Repl.Vol.2001). Accordingly, the PSC staff and Mr. Neff took exception to the administrative law judge's ruling, and the PSC subsequently ordered a refund of Mr. Neff's sewer reconnection fee, by order dated June 26, 2001, as referenced above.

4. With regard to landlord liability, the town's ordinance provided: "The rates and charges aforesaid shall be billed to the owners or occupants of the premises, and if the occupant of any premises is not the owner, both the occupant and the owner shall be responsible for the payment of the sewer service charge." West Virginia Code § 8–20–10(c) provides, in pertinent part, as follows:

That an owner of real property may not be held liable for the delinquent rates, fees or charges for services or facilities of a tenant, nor shall any lien attach to real property for the reason of delinquent rates, fees or charges for services or facilities of a tenant of the real property, unless the owner has contracted directly with the municipality to purchase such services or facilities.

sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

*See also* Syl. Pt. 10, *State ex rel. Marockie v. Wagoner*, 191 W.Va. 458, 446 S.E.2d 680 (1994).

This Court will utilize the mechanism of a writ of mandamus as extraordinary relief when a public officer or body has failed in the performance of a mandatory, non-delegable duty. " 'Mandamus is a proper remedy to require the performance of a non-discretionary duty by various governmental agencies or bodies.' Syllabus Point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District*, 151 W.Va. 207, 151 S.E.2d 102 (1966)." Syl. Pt. 4, *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 520 S.E.2d 854 (1999). " 'To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.' Syl. Pt. 2, *State ex rel. Cooke v. Jarrell*, 154 W.Va. 542, 177 S.E.2d 214 (1970)." Syl. Pt. 1, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988).

With specific reference to the rights of the PSC to relief through mandamus, this Court explained in *State ex rel. Public Service Commission v. Gore Water Association*, 193 W.Va. 555, 457 S.E.2d 492 (1995), that the PSC is authorized to compel obedience to its lawful orders through mandamus or injunctive relief in the name of the State of West Virginia. *Id.* at 557, 457 S.E.2d at 494. This Court's proper review of a PSC order was set forth in syllabus point two of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), as follows:

In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has em-

ployed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

This Court subsequently summarized that formula for review in syllabus point one of *Central West Virginia Refuse, Inc. v. Public Service Commission*, 190 W.Va. 416, 438 S.E.2d 596 (1993), where we held as follows:

The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syllabus point one of *Sexton v. Public Service Commission*, 188 W.Va. 305, 423 S.E.2d 914 (1992), also provides the following guidance:

" ' "[A]n order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." *United Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33, 99 S.E.2d 1 (1957).' Syllabus Point 5, in part, *Boggs v. Public Service Comm'n*, 154 W.Va. 146, 174 S.E.2d 331 (1970)." Syllabus Point 1, *Broadmoor/Timberline Apartments v. Public Service Commission*, 180 W.Va. 387, 376 S.E.2d 593 (1988).

### III. PSC Jurisdiction Over the Municipality

■ In the petition for writ of mandamus filed with this Court, the PSC requested that Fayetteville be required to (1) comply with the June 26, 2001, PSC order regarding the reconnection fee; (2) file a tariff with the PSC; and (3) comply with West Virginia Code § 8–20–10, regarding landlord liability for a tenant's delinquency. Upon oral argument, however, this Court was informed that the issue of filing a tariff had been resolved; thus, the writ presently encompasses only the issues of the ordinance requiring a reconnection fee under certain circumstances and compliance with West Virginia Code § 8–20–10.

■ The extent of PSC authority over a municipality is central to resolution of this matter. The PSC's considerable powers concerning the establishment of rates for public utilities are developed in West Virginia Code § 24–2–3, which states, in pertinent part, as follows:

The [PSC] shall have the power to enforce, originate, establish, change and promulgate tariffs, rates, joint rates, tolls and schedules for all public utilities.... And whenever the [PSC] shall, after hearing, find any existing rates ... unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of this chapter, the [PSC] shall by an order fix reasonable rates ... to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any provisions of law [.]

In syllabus point one of *West Virginia–Citizen Action Group v. Public Service Commission*, 175 W.Va. 39, 330 S.E.2d 849 (1985), this Court explained:

[t]he Public Service Commission was created by the Legislature for the purpose of exercising regulatory authority over public utilities. Its function is to require such entities to perform in a manner designed to safeguard the interests of the public and the utilities. Its primary purpose is to serve the interests of the public. *Boggs v. Public Service Commission*, 154 W.Va. 146, 174 S.E.2d 331 (1970).

The PSC's jurisdiction is further derived from West Virginia Code § 24–2–7(a) (1979) (Repl.Vol.2001), which provides:

Whenever, under the provisions of this chapter, the [PSC] shall find any regulations, measurements, practices, acts or services to be unjust, unreasonable, insufficient or unjustly discriminatory, or otherwise in violation of any provisions of this chapter, or shall find that any service is inadequate, or that any service which is demanded cannot be reasonably obtained, the [PSC] shall determine and declare, and by order fix reasonable measurements, regulations, acts, practices or services, to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory, inadequate or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable.

The PSC's authority over rates and charges of municipalities, however, is expressly limited by the statutory scheme. Fayetteville contends that it is not controlled by the PSC scheme of regulation of rates and charges since it is a municipality, citing West Virginia Code § 24–2–3 and § 24–2–4b as support for that proposition. West Virginia Code § 24–2–3, in addition to providing more general powers of the PSC, contains a decisive caveat, as follows: "Provided, That the commission may exercise such rate authority over municipal utilities only under the circumstances set forth in section four-b of this article." West Virginia Code § 24–2–4b(a) also explains the limitation regarding authority over rates and charges of municipalities, stating as follows, in relevant part: "The rates and charges of ... municipally operated public utilities ... are not subject to the rate approval provisions of section four or four-a [§ 24–2–4 or § 24–2–4a] of this article, but are subject to the limited rate provisions of this section."

■ Resolution of the issues presently before this Court must be founded upon an accurate understanding of the extent of the exemption provided by West Virginia Code § 24–2–4b. The statute merely exempts mu-

nicipalities from the rate approval sections of 24–2–4 and 24–2–4a; it does not deprive the PSC of jurisdiction over the municipality or eliminate the PSC's authority to otherwise address issues of the municipally operated public utilities. The rate making functions, statutorily limited with regard to municipalities, are not identical to the adjudicatory functions.[5] In exempting municipalities from the extremely detailed rate procedures outlined in sections 24–2–4 and 24–2–4a, the statutory scheme does not remove municipalities from the authority of the PSC to exercise its general powers to require reasonable, non-discriminatory practices based primarily upon the cost of service. Specifically, West Virginia Code § 24–2–4b(b) provides that "[a]ll rates and charges set by ... municipally operated public utilities ... shall be just, reasonable, applied without unjust discrimination or preference and based primarily on the costs of providing these services." The exemption upon which Fayetteville relies simply does not reach the question of what happens when a practice of a municipally operated public utility is unreasonable. Nor does it inhibit the right of a consumer to allege unreasonableness or absence of cost-based services.[6] It does not undermine the PSC's right or obligation to discharge its regulatory responsibilities.

 Based upon the statutory provisions regarding PSC authority, we find that the PSC did not exceed its statutory authority by exercising jurisdiction over the issues presented in Mr. Neff's complaint and the matters of statutory compliance raised by the ordinance's reference to landlord liability. Properly exercising its jurisdiction, the PSC found that Mr. Neff's sewer service had not

been disconnected and that it was consequently improper for the town to charge him a reconnection fee. The PSC concluded as follows:

> The Commission concludes it would be an unreasonable practice for a utility and/or municipality, which provides both water and sewer service, to charge two reconnection fees when only water service is reconnected after being disconnected due to delinquent water and sewer bills since the utility and/or municipality is physically making only one reconnection.

The PSC based these conclusions upon the facts of Mr. Neff's case and applicable guidelines regarding imposition of reconnection fees. *See* 150 CSR 7–4.8.5a.B; 150 CSR 5–4.5.3a.B. Having reviewed the PSC determination regarding imposition of reconnection fees, we find that the PSC findings are not contrary to the evidence, without evidence to support them, arbitrary, or result from a misapplication of legal principles.

 Likewise, we find no reason to disturb the PSC's conclusions with regard to its determination of the illegality of the ordinance holding a landlord liable for a tenant's delinquency. Fayetteville's ordinance, quoted above, attempts to hold a landlord liable for the delinquencies of the tenant, and counsel for the town has asserted that such liability is justified based upon the contractual relationship existing not only between the municipally operated public utility and the tenant, but also between the utility and the landlord. This means of establishing landlord liability was attempted by the City of Keyser and challenged in the PSC forum in 1991. The administrative law judge ruled

---

**5.** We recognized this distinction, albeit in a somewhat different context, in *Central West Virginia Refuse,* when we explained that rate making is a legislative function and that "[w]hen the PSC is exercising its rate-making authority under W.Va.Code, 24–2–3, its decisions are not subject to the doctrines of stare decisis or res judicata simply because rate making is a legislative function." *Id.* at 421, 438 S.E.2d at 601; *see also City of Charleston v. Public Service Commission,* 57 F.3d 385, 393 (4th Cir.1995), cert. denied, 516 U.S. 974, 116 S.Ct. 474, 133 L.Ed.2d 404 (1995) ("The authority of the PSC to regulate the rates and practices of West Virginia municipalities, when acting as utilities, has existed at least since 1914.... The specific power of the PSC to regu-

late the extension ... and termination ... of service by a public utility to its customers is also well established").

**6.** An example of the absurdity of any construction which would disallow such general PSC supervisory powers in the municipal setting would be the case of a citizen who had not been a resident at the time the rates were initially filed. If that citizen is subjected to an unreasonable practice, he would have no remedy under the construction urged by Fayetteville. This Court must refuse to construe the statute in such an unreasonable manner.

that Keyser's ordinance conflicted with West Virginia Code § 8–20–10(c) and was void. The PSC affirmed the administrative law judge's findings, articulating that a while a landlord may choose to contract directly with the municipality if he seeks to furnish utilities as an element of the rental package, the statute is not an instrument through which municipalities can compel a landlord to contract with the municipality and to assume responsibility for the tenant's delinquencies. This Court denied Keyser's petition for appeal from that PSC decision.

██ In the present case, premised upon the distinct language of the statute and the failed prior attempt by the City of Keyser to circumvent the intent of the statute, the PSC concluded that Fayetteville's ordinance was in violation of the statute. This Court has consistently held that "[w]hen a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. Pt. 1, *Vector Co. v. Board of Zoning Appeals,* 155 W.Va. 362, 184 S.E.2d 301 (1971); *see also Hock v. City of Morgantown,* 162 W.Va. 853, 253 S.E.2d 386 (1979). Finding no indication that the PSC conclusion regarding the landlord statute was contrary to the evidence, without evidence to support it, arbitrary, or resulted from a misapplication of legal principles, we grant the requested writ of mandamus.

### IV. Conclusion

Based upon the foregoing, this Court grants the writ of mandamus, as requested by the PSC, and orders the Town of Fayetteville to comply with the provisions of West Virginia Code § 8–20–10 and the June 26, 2001, order of the PSC.

Writ granted.

DAVIS, C.J., dissents and files an opinion.

DAVIS, C.J., dissenting:

In this proceeding, the Court was asked to determine whether the Public Service Commission (hereinafter referred to as the "PSC") had jurisdiction to require the Town of Fayetteville (hereinafter referred to as the "Town") to refund a sewer reconnection fee to a customer, Michael Neff. This Court was also asked to invalidate part of an ordinance holding landlords liable for delinquent water and sewer fees. The majority opinion concluded that the PSC had jurisdiction of the matter and awarded a writ of mandamus. For the reasons set out below, I dissent.

### PSC's Jurisdiction over Municipalities is Statutorily Limited

The majority opinion in this case does an admirable job in quoting and analyzing various statutes that support its conclusion. However, the majority opinion fails to discuss and analyze the actual statutory provision which controls the PSC's jurisdiction over municipalities operating utilities: W. Va. Code § 24–2–4b(c) (1994) (Repl.Vol.2001). This provision states:

The commission shall review and approve or modify such rates upon the filing of a petition within thirty days of the adoption of the ordinance or resolution changing said rates or charges by:

(1) Any customer aggrieved by the changed rates or charges who presents to the commission a petition signed by not less than twenty-five percent of the customers served by such municipally operated public utility, or twenty-five percent of the membership of the electric, natural gas or telephone cooperative residing within the state; or

(2) Any customer who is served by a municipally operated public utility and who resides outside the corporate limits and who is affected by the change in said rates or charges and who presents to the commission a petition alleging discrimination between customers within and without the municipal boundaries. Said petition shall be accompanied by evidence of discrimination; or

(3) Any customer or group of customers who are affected by said change in rates who reside within the municipal boundaries and who present a petition to the commission alleging discrimination between said customer or group of customers and other customers of the municipal utility. Said

petition shall be accompanied by evidence of discrimination.

W. Va.Code § 24–2–4b(c).

As is readily apparent, West Virginia Code § 24–2–4b(c) "provides for a very limited set of circumstances by which a petition may be filed. Further, it provides for a specific set of entities who may protest municipal operated utility rates." *City of South Charleston v. Public Serv. Comm'n*, 204 W.Va. 566, 573, 514 S.E.2d 622, 629 (1999) (per curiam). Under the express language of the relevant statute, the PSC's authority over municipalities and their utility services may be initiated under only three limited situations: (1) a customer who presents a petition signed by not less than 25% of the customers served by such municipally operated public utility; (2) a customer who resides outside the corporate limits who alleges discrimination between customers within and without the municipal boundaries; or (3) a customer who resides within the municipal boundaries who alleges discrimination between him/her and other customers of the municipal utility. *See City of Benwood v. Public Serv. Comm'n*, 165 W.Va. 700, 271 S.E.2d 342 (1980) (per curiam) (finding that the PSC did not have statutory jurisdiction). This Court has previously recognized that "unless the conditions set forth in W. Va.Code § 24–2–4b(c) [1994], are met, the Commission is without jurisdiction to consider rate increases by municipally owned public utilities." *City of Wheeling v. Public Serv. Comm'n*, 199 W.Va. 252, 257, 483 S.E.2d 835, 840 (1997) (per curiam). *See also City of South Charleston v. Public Serv. Comm'n*, 204 W.Va. at 574, 514 S.E.2d at 630 (recognizing a petition must be filed under W. Va.Code § 24–2–4b(c) before the PSC can acquire jurisdiction).

The record in this case is uncontroverted and quite clear. When Mr. Neff sought to have the PSC intervene in his case, he failed to satisfy any of the three jurisdictional prerequisites of W. Va.Code § 24–2–4b(c). Thus, the PSC had no jurisdiction to invalidate a part of the Town's ordinance or to require the Town to provide a refund to Mr. Neff.[1]

Nevertheless, the majority opinion purports to grant the PSC this new jurisdictional authority by applying language from W. Va.Code § 24–2–4b(b), which provides that "[a]ll rates and charges set by ... municipally operated public utilities ... shall be just, reasonable, applied without unjust discrimination or preference and based primarily on the costs of providing these services." Explaining its reasoning, the majority opinion contends that this language grants the PSC "general powers to require reasonable, non-discriminatory practices based primarily upon the cost of services." Unfortunately, this point is irrelevant. W. Va.Code § 24–2–4b(b) sets out the *general* powers of the PSC but says nothing about invoking the PSC's jurisdiction to exercise those general powers. The issue of invoking the PSC's jurisdiction is contained solely in W. Va.Code § 24–2–4b(c) and is limited to those three circumstances previously identified. Moreover, it is contrary to rudimentary principles of statutory construction to permit a statutory provision dealing with an agency's general authority to act as the basis for exercising that authority, particularly when there is a specific statutory provision dealing with the circumstances in which that authority may be invoked. *See* Syl. pt. 1, in part, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute[.]"). Consequently, W. Va.Code § 24–2–4b(b) cannot be relied upon as authority for invoking the PSC's jurisdiction.

---

1. Mr. Neff did not challenge the ordinance as it pertained to the obligation of landlords to pay delinquent tenant's fees. The PSC *sua sponte* addressed this issue after Mr. Neff filed his petition seeking a refund. Had Mr. Neff's petition met any of the requirements for filing a petition under W. Va.Code § 24–2–4b(c), our cases would permit the PSC to *sua sponte* address other issues under an ordinance not addressed by the petitioning party. *See, e.g., City of South Charleston v. Public Serv. Comm'n*, 204 W.Va. 566, 574,

514 S.E.2d 622, 630 (1999) (holding that once the PSC's jurisdiction is properly invoked, it "may, pursuant to W. Va.Code § 24–2–3 [1986], originate, establish or change 'existing rates' that the Commission finds to be unjust or discriminatory"). In the instant proceeding, Mr. Neff did not properly initiate the PSC's jurisdiction. Therefore, the PSC could not *sua sponte* address the ordinance's provision pertaining to landlords having to pay their tenants' delinquent fees.

Under the majority opinion, the PSC now has jurisdiction to alter any municipal ordinance addressing public utilities, based upon any general and nonstatutory-based complaint filed by a single customer. The majority's decision is contrary to W. Va.Code § 24–2–4b(c) and is wrong. Clearly, the Legislature limited the circumstances by which individuals may challenge utility rates or charges by a municipality.[2] Therefore, the writ of mandamus should have been denied.

For the reasons set out above, I dissent.

2. The PSC will now be inundated with petitions that do not satisfy the statutory requirements of W. Va.Code § 24–2–4b(c), and will attempt to decline jurisdiction therein. When the PSC declines jurisdiction, this Court will then be flooded with appeals arguing that, pursuant to the majority opinion in this case, the PSC cannot limit its jurisdiction to petitions filed under W. Va.Code § 24–2–4b(c). Unfortunately, those arguments will be correct because the majority opinion countenances such a result.