376 S.E.2d 593

**BROADMOOR/TIMBERLINE APARTMENTS**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, Frank Volk, and the City of Morgantown.**

**No. 18533.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

John S. Dalporto, Thomas H. Newbraugh, Fusco & Newbraugh, Morgantown, for Broadmoor/Timberline Apartments.

William F. Byrne, Morgantown, for Volk.

Kenneth E. Kincaid, Morgantown, for Town of Morgantown.

Mary C. Wright, Legal Div., PSC, Charleston, for the PSC of West Virginia.

MILLER, Justice:

The question presented is: Whether private sewer lines that transport waste from public utility customers into the utility's sewer system are subject to the jurisdiction of the public service commission (PSC).

### I.

Broadmoor/Timberline Apartments (Broadmoor)[1] is a private apartment complex situate less than one mile outside of the City of Morgantown. In the early 1970s, as part of an expansion of its facilities, Broadmoor constructed a system of manholes and sewer lines to service the complex. This system transports waste from individual apartments via a series of 8-inch sewer lines. These lines ultimately join the Morgantown municipal sewer system at a point beyond the Broadmoor property. Since the lines were completed, Broadmoor has borne full responsibility for their repair and maintenance.[2]

There are 274 tenants at the Broadmoor complex. Each of the tenants is individually billed by the city, at its tariff rate, for sewer service. Sewer charges are a function of water consumption, which is metered at each of the apartments.

Frank Volk, the complainant, is the owner of an undeveloped tract of land substantially surrounded by the Broadmoor complex.[3] For over twelve years, Mr. Volk has attempted unsuccessfully to obtain Broadmoor's consent to tap onto its sewer lines. It appears that the principal reason for the impasse is Mr. Volk's refusal to reveal his contemplated use for the tract. Without the tap, Mr. Volk is unable to economically obtain any sewer service.[4]

In 1984, Mr. Volk filed a complaint with the PSC to compel Broadmoor to permit him to tap onto its sewer lines.[5] After inquiry by the PSC staff, it was determined that the lines did not service more than twenty-five persons other than Broadmoor and that the PSC, therefore, lacked juris-

1. This complex was constructed in 1967 by Town & Campus, International, and operated as "Broadmoor Apartments." It is now owned by San Jacinto Savings Association of Texas, and operated as "Timberline Apartments."

2. Testimony by Betty D. Stone, Broadmoor's resident manager, revealed that the City of Morgantown was periodically requested to perform repair and maintenance work on the lines. Where such a request was made, Broadmoor paid for all necessary labor and equipment.

3. Mr. Volk conveyed to Town & Campus, International the tract on which the Broadmoor complex was built. Subsequently, he conveyed an adjoining tract to Challenger Corporation. The Volk property, consisting of 1.536 acres, is now landlocked except for a right of way across the Challenger tract.

4. Charles E. Windham, Jr., a PSC engineer, stated that there are three other methods by which Mr. Volk could remove waste from the tract. First, he could install a treatment plant or holding tank on the tract, subject to approval by the state health department and at a cost of $2500 to $35,000. Second, he could lay a service line to join the Morgantown sewer system at a point 500 feet west of the tract. This would necessitate the purchase of a right of way from Broadmoor and the disturbance of the Broadmoor parking lot. Third, he could join the Morgantown system approximately 1500 feet south of the tract. This would require the construction of a pump or lift station. The third option is not yet available, as that portion of the sewer system is subject to a court-ordered moratorium.

5. We do not have possession of the 1984 complaint or of records relative to that complaint.

diction.[6] The administrative law judge thereupon dismissed the complaint.

On June 1, 1987, Mr. Volk filed a second complaint against Broadmoor. It averred, in part, that Broadmoor "function[ed] as a sewer system" and that Mr. Volk had been "consistently ... denied access to the sewer system and therefore [had] no sewer outlet." Broadmoor answered the complaint on June 26, 1987. Numerous defenses were raised by Broadmoor, including lack of jurisdiction and *res judicata*. The City of Morgantown was joined by the PSC as a party defendant by order dated September 21, 1987.

A hearing in the case was held before an administrative law judge on October 22, 1987. In a decision entered on December 23, 1987, the administrative law judge ruled that Mr. Volk was bound by the prior determination that Broadmoor was not a public utility. He further ruled, however, that Broadmoor's sewer lines were *de facto* a part of the Morgantown municipal sewer system and that Broadmoor had unlawfully interposed itself between the city and its sewer customers. His order directed the city to obtain Broadmoor's lines and all appurtenant rights of way by negotiation or, if necessary, by eminent domain. He also determined, as a fact, that it was reasonable to permit Mr. Volk to tap onto the Broadmoor lines. The PSC staff was to monitor compliance with the order.

Broadmoor timely filed exceptions to the decision. The PSC affirmed in an order and opinion dated April 15, 1988, and determined that the decision was "reasonable and in the public interest."

## II.

We discuss preliminarily two procedural issues. Broadmoor asserts that the decision rendered as to Mr. Volk's prior complaint is *res judicata*. In the alternative,

---

6. W.Va.Code, 24–2–1, states, in part, as follows: "The jurisdiction of the [public service] commission shall extend to all public utilities in this state, and shall include any utility engaged in any of the following public services: ... sewer systems servicing twenty-five or more persons or firms other than the owner of the sewer systems[.]"

Broadmoor contends that the PSC lacked jurisdiction in the case.

### A.

■ Broadmoor asserts that Mr. Volk's complaint is barred by principles of *res judicata*. It is, of course, an essential element of *res judicata* that there must have been a prior adjudication of the case on the merits. We summarized this rule in Syllabus Point 6 of *Johnson v. Huntington Moving & Storage, Inc.,* 160 W.Va. 796, 239 S.E.2d 128 (1977):

> "Before the principles of res judicata can be involved, there must have been an adjudication on the merits of a case."

*See also Nickey v. Grittner,* 171 W.Va. 35, 297 S.E.2d 441 (1982); *Rife v. Woolfolk,* 169 W.Va. 660, 289 S.E.2d 220 (1982).

Quite obviously, the disposition of Mr. Volk's 1984 complaint was not an adjudication on the merits. The sole determination made by the PSC staff, and by the administrative law judge, was that the PSC lacked jurisdiction over Broadmoor as a public utility. This did not reach the merits of Mr. Volk's complaint that he was unreasonably denied the opportunity to tap onto Broadmoor's sewer lines. We thus find that *res judicata* does not bar Mr. Volk's complaint of June 1, 1987.

### B.

■ As pointed out in note 6, *supra,* W.Va.Code, 24–2–1, limits the jurisdiction of the PSC to those sewer systems that provide service to "twenty-five or more persons or firms other than the owner" of the sewer system. Broadmoor points out that its sewer system services its tenants, and not the public. Where sewer service is provided exclusively to tenants, Broadmoor asserts that the provider is not subject to PSC jurisdiction.

The record shows that, in addition to Broadmoor tenants, two local businesses were permitted to tap onto Broadmoor's lines. These businesses, a tavern and a laundromat, paid a consideration to Broadmoor for the tap.

There is authority to support Broadmoor's proposition when the attempt is made to force the landlord into public utility status. We acknowledged this law in *Holdred Collieries v. Boone County Coal Corp.*, 97 W.Va. 109, 124 S.E. 493 (1924), where the defendant, a coal company, leased sizeable coal tracts to Holdred and others. Under its lease, the company was required to install and operate a power plant and to deliver electric power at a fixed price to a coal mine operated by Holdred. Subsequently, the company made arrangements to have the electric power supplied by a local public utility and dismantled its generating facility. The public utility's rates were higher than the rates specified in the lease. As a consequence, Holdred sued and claimed damages for the extra cost of the power. The company contended that its contractual obligation to supply power made it a public utility and that its rates were subject to PSC control.

This Court, without any extensive discussion of the matter, concluded that company was not a public utility, and pointed to the private nature of the contract and the fact that power was provided only to tenants. The Court also noted that the lease had been executed before the PSC had been created. Clearly, the fact situation in *Holdred* heavily influenced the decision. The power plant was built by the company and was used solely to deliver power to its tenants.

This point was emphasized by the Court in *Holdred* in distinguishing its earlier case of *Wingrove v. Public Serv. Comm'n*, 74 W.Va. 190, 81 S.E. 734 (1914). There, electric power was supplied by a coal company to its mine and tenant houses and also to some adjacent businesses not owned by the company. Additional businesses sought to obtain electric power, but the PSC refused relief. This Court reversed and held that the company was a public utility since it met the statutory definition of a public service corporation.

Although this issue does not frequently arise, *Holdred* is consistent with a majority of those cases that have considered the question. A landlord who provides utility services to its tenants, and not to the public, is generally not deemed to be a public utility. Annot., 75 A.L.R.3d 1204 (1977).

There are, however, several features of this case that distinguish it from *Holdred.* First, Broadmoor has permitted other parties to tap onto its sewer lines and has allowed its tenants to be separately billed by Morgantown for sewer service. More importantly, the PSC did not direct its order against Broadmoor. To the contrary, the PSC specifically declined to find Broadmoor to be a public utility. Jurisdiction was instead premised on the sewer services provided by the City of Morgantown, which is indisputably a public utility. It is clear that Morgantown furnishes the sewer service, disposes of the waste at its treatment plant, and bills tenants for the service. Broadmoor participated in the case merely as a party in interest, as its sewer lines would potentially be affected.

### III.

From a factual standpoint, we believe the evidence sustains the PSC's order. It is settled law that an order of the PSC, premised on its findings of fact, will be disturbed only in narrow circumstances, as we stated in Syllabus Point 5, in part, of *Boggs v. Public Serv. Comm'n*, 154 W.Va. 146, 174 S.E.2d 331 (1970):

" '[A]n order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33 [99 S.E.2d 1 (1957)]."

It is also clear that, by virtue of W.Va.Code, 24–1–1, *et seq.*, the PSC possesses broad authority to supervise and control public utilities that are subject to its jurisdiction, as we stated in Syllabus Point 6 of *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960):

"The public service commission has the statutory power and authority to control the facilities, charges and services of all public utilities and to hear and determine the complaints of persons entitled to the

services which such utilities afford; and the only limitation upon such power and authority is that the requirements shall not be contrary to law and that they shall be just and fair, just and reasonable, and just and proper."

*See also State ex rel. Public Serv. Comm'n v. Willis,* 150 W.Va. 175, 144 S.E.2d 630 (1965); *Delardas v. Morgantown Water Comm'n,* 148 W.Va. 776, 137 S.E.2d 426 (1964); *United Fuel Gas Co. v. Public Serv. Comm'n,* 103 W.Va. 306, 138 S.E. 388 (1927).

Broadmoor's sewer lines function as an integral part of Morgantown's sewer system. Each of Broadmoor's 274 tenants is individually metered and billed by the city for sewer service and is, therefore, a customer of the city. In addition, as earlier noted, there are third parties outside the Broadmoor complex that receive sewer service via its lines. Broadmoor's sewer lines provide the means by which waste is transported from these customers into the city's main system.

The PSC found that ownership of the lines by Broadmoor unduly impairs Morgantown's ability to provide safe and reasonable sewer service to the Broadmoor tenants and other potential customers. Routine inspection and maintenance of the lines by the city is impossible. Furthermore, the power to allow or deny access to the lines is possessed by a private, and not a public, entity.[7] We thus find the PSC's order requiring the city to obtain ownership of the lines was proper and supported by competent evidence.[8]

We also find that the PSC correctly determined that it was reasonable to allow Mr. Volk to tap onto the lines. While Broadmoor's manager stated that the lines were at full capacity, she was merely a lay witness and her testimony was expressly contradicted by a professional engineer. Furthermore, the party who bears the real burden of effectuating the PSC's order, the City of Morgantown, has made no complaint about the order and has not appealed it. The city was present by counsel at the administrative hearing and must be deemed to be totally familiar with the problem.

We, therefore, conclude that the order of the PSC will not be reversed at the behest of Broadmoor whose sewer lines are ordered to be acquired by the City of Morgantown, a public utility, under the follow-

---

7. We discussed a similar situation in an unpublished per curiam order in *Hurst v. West Virginia Water Co.,* Case No. 8850, 66 ARPSCWV 238 (1978), *aff'd sub nom., West Augusta Dev. Corp. v. Public Serv. Comm'n,* No. 14585 (W.Va. April 1, 1980). In *Hurst,* the developer of a shopping complex entered into a contract with a public utility to provide water service for its tenants. A water pipeline was extended from the utility's main line at the cost of the developer. Tenants of the complex were individually metered for water consumption and billed by the utility at its tariff rate. As new customers were added, the cost of the pipeline was rebated to the developer.

In accordance with the contract, the utility declined to provide water service to property owners in the vicinity without the prior consent of the developer. One property owner filed a complaint with the PSC in which it averred that the utility refused water service in a discriminatory manner. We concluded that the pipeline was, in essence, an ordinary extension of the utility's main system and that title to the pipeline vested in the utility. The developer, by virtue of its contract, was interposed between the utility and its customers, and the contract provision requiring its consent to additional customers was therefore void.

8. Broadmoor raises two further points that we may dispose of summarily. Broadmoor asserts that the PSC order was improper insofar as it required the city to exercise the power of eminent domain if it is unable otherwise to obtain the lines. Broadmoor notes that the PSC lacks the power of eminent domain. It contends that the order is invalid, as the PSC may not do indirectly what it cannot do directly.

This is an incorrect statement of the law. Municipalities that operate sewer systems may, by virtue of W.Va.Code, 8–20–2, exercise the power of eminent domain. When a municipality is obliged to exercise that power in furtherance of its public responsibility, but refuses to do so, the PSC may require the exercise of the power by appropriate order.

Second, Broadmoor claims that the order violates W.Va.Code, 54–1–2, which provides that property may not be condemned for sewer purposes unless it serves at least "a single building or institution." Since Mr. Volk's tract is vacant, Broadmoor contends that the requirements of W.Va.Code, 54–1–2, are not met. Broadmoor misreads the statute. Broadmoor's lines service the whole of the Broadmoor complex, as well as two other local businesses. The requirements of W.Va.Code, 54–1–2, are clearly met.

ing conditions: (1) the PSC has found Morgantown is already providing sewer service with the approval of the landlord to approximately 274 tenants of the complex, which service is separately billed; (2) the PSC has found that the landlord has previously allowed third parties outside the apartment complex to tap on and receive the utility's sewer service; (3) the PSC has found that the acquisition of the sewer lines is necessary to provide extension of the utility's sewer service to other parties and will enable the utility to adequately inspect and maintain the acquired lines; (4) the PSC has required the utility to pay the landlord the value of the acquired lines either through a negotiated price or through eminent domain; and (5) the utility has participated in the case and raises no objection to the order.[9]

For the foregoing reasons, the April 15, 1988 order and opinion of the PSC is affirmed.

AFFIRMED.

**9.** As a final matter, it appears that the PSC order does not specifically authorize a right of way across Broadmoor's property to permit the tap. Since the PSC has already determined that the tap is reasonable, it may enter any subsequent orders necessary to effectuate the tap.