712 S.E.2d 498

### JEFFERSON UTILITIES, INC., Petitioner

v.

### PUBLIC SERVICE COMMISSION OF WEST VIRGINIA; Homeowners Associations of Breckenridge, Deerfield, Gap View, Meadowbrook, Sheridan Estates, and Briar Run; Citizens for Fair Water, Inc; and Kay Moore, Scott Tatina and Regina Fite, Individuals, Respondents.

No. 11–0505.

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2011.

Decided June 22, 2011.

---

19.  See n. 11, supra.

Ancil G. Ramey, Esq., E. Dandridge Mac-Donald, Esq., Todd M. Swanson, Esq., Steptoe & Johnson PLLC, Charleston, WV, for Petitioner, Jefferson Utilities, Inc.

Ronald E. Robertson, Jr., Esq., Richard E. Hitt, Esq., Caryn Watson Short, Esq., Charleston, WV, for Respondent, Public Service Commission of West Virginia.

Samuel F. Hanna, Esq., Hanna Law Office, Charleston, WV, for Intervenors, Homeowners Associations of Breckenridge, Deerfield, Gap View, Meadowbrook, Sheridan Estates, and Briar Run; Citizens for Fair Water, Inc.; and Kay Moore, Scott Tatina, and Regine Fite.

## PER CURIAM:

This case is before this Court upon appeal of an order entered by the respondent, the Public Service Commission of West Virginia (hereinafter "Commission"),[1] granting a rate increase of 4.4 percent to the petitioner, Jefferson Utilities, Inc. (hereinafter "JUI"), a privately-held public utility authorized to provide water service to several areas of Jefferson County, West Virginia.[2]  In this

---

1. W. Va.Code § 24-5-1 (1979) (Repl.Vol.2008), provides, in pertinent part:

Any party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present a petition in writing to the Supreme Court of Appeals, or to a judge thereof in vacation, within thirty days after the entry of such order, praying for the suspension of such final order.

2. JUI owns and operates eight water systems in Jefferson County: Walnut Grove, Meadowbrook, Deerfield, Shenandoah Junction, Burr/Bardane,

appeal, JUI contends that the Commission erred by rejecting the 22.4 percent rate increase recommended by the administrative law judge. Upon consideration of the briefs and oral argument, as well as the submitted record and pertinent authorities, the final order of the Commission is affirmed.

## I.

### FACTS

On June 30, 2010, JUI filed a request with the Commission for a rate increase of approximately 72.2 percent.[3] At the same time, JUI submitted a petition requesting consent and approval of an affiliated operation and maintenance agreement (hereinafter "operation agreement") with Snyder Environmental Services, Inc. (hereinafter "SES").[4] SES is a construction utility and environmental management company that has provided all of JUI's operation and maintenance services. JUI only has one employee, Lee Snyder. Mr. Snyder and his wife, Cynthia, own both JUI and SES. In addition to seeking a rate increase and approval of the operation agreement, JUI also sought the Commission's approval of various lease agreements whereby JUI would lease office space in a building owned by the Snyders. JUI would then share and allocate the costs of certain office space and expenses with SES.[5]

The original rate case portion of the filing was dismissed because it did not provide accurate notice detailing the effect of the requested rate change on various classes of customers as required by 150 C.S.R. § 2–10. JUI then refiled its rate case on August 20, 2010. The rate case was consolidated with the petitions for consent and approval of the operation and lease agreements. Thereafter, several parties were granted intervenor status including the homeowners associations of the Breckenridge, Deerfield, Gap View, Meadowbrook, Sheridan Estates, and Briar Run subdivisions; Citizens for Fair Water, Inc.; the County Commission of Jefferson County; and individuals Kay Moore and Scott Tatina.[6] A hearing was held before an administrative law judge in the City of Ranson, West Virginia, on December 1 and 2, 2010. The matter was also briefed by the parties. The administrative law judge then entered a recommended decision on January 7, 2011.

The administrative law judge recommended a rate increase of 22.4 percent which would have resulted in a revenue increase to JUI of $310,946.00 and a continuation of the previously approved $12.00 surcharge. The administrative law judge also recommended that the operation agreement between JUI and.SES be approved for a three-year term; however, the administrative law judge recommended that the Commission reject the lease

Harpers Ferry Campsites, Westridge Hills, and Keys Ferry Acres.

3.  JUI was requesting increased rates and charges of approximately $998,657 for providing water service to approximately 2,196 customers in Jefferson County, to become effective August 1, 2010. As set forth above, this translated into a rate increase of 72.2 percent before application of a previously approved $12.00 per month surcharge per customer. For average residential JUI customers using 4,500 gallons of water per month, their water bill would have increased from $56.34 to $88.34 per month, including the $12.00 surcharge.

4.  W. Va.Code § 24–2–12 (1984) (Repl.Vol.2008) requires a public utility to obtain consent and approval of the Commission prior to entering into an agreement with an affiliate.

5.  The building wherein JUI sought to lease office space is located on Lots 16 and 17 of an industrial park in Kearneysville, West Virginia. Under the first lease agreement, Lee and Cynthia Sny-

der would lease Lot 16 to JUI. The second lease provided that Snyder LLC would lease Lot 17 to Lee and Cynthia Snyder. Under the third lease, Lee and Cynthia Snyder would sublease Lot 17 to JUI. The fourth lease was the sharing and allocation agreement between JUI and SES regarding office space and expenses related to the leased property.

6.  According to the Commission, JUI customers have been active in recent JUI filings because of prior large rates increases and problems with the quality of service. Consequently, numerous interventions have been granted by the Commission in formal proceedings involving JUI. Also, according to the Commission, JUI received a rate increase in 2009, eight months prior to the requested rate increase at issue here, which authorized a total revenue increase of $503,684.00, consisting of $302,400.00 to be collected annually as a $12.00 monthly surcharge to all ratepayers and additional rate increases totaling $201,284.00 of revenue. The result of the prior rate case was a more than 100 percent rate increase for a majority of JUI's customers.

agreements. Exceptions to the recommended decision were filed by JUI, the PSC Staff, and the Intervenors.

On February 18, 2011, the Commission entered the final order which denied approval of the operation agreement between JUI and SES, denied approval of the lease agreements, and initiated a general investigation of JUI's utility operations including the proposed agreements. The order also adopted the PSC staff's recommendation with regard to the rate increase thereby reducing the rate increase recommended by the administrative law judge to 4.4 percent, a revenue increase of $66,324.00.

On March 21, 2011, JUI filed its appeal with this Court challenging the Commission's decision with regard to the rate increase, as well as the Commission's refusal to approve the operation and lease agreements. On May 10, 2011, JUI filed its reply brief with this Court in which it advised that it has received notice that SES is terminating its operation agreements with JUI effective September 30, 2011.[7] JUI indicated that it plans to hire its own employees and obtain vehicles and equipment to perform the services formerly provided by SES. Also, JUI will no longer be leasing space from the Snyders and, instead, will obtain office space elsewhere. Accordingly, JUI is no longer pursuing the assignments of error relating to the operation and lease agreements as those issues are now moot. Therefore, the sole issue before this Court is the Commission's decision with regard to the rate increase requested by JUI.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 1 of *Central West Virginia Refuse, Inc. v. Public Service Commission of West Virginia*, 190 W.Va. 416, 438 S.E.2d 596 (1993), this Court explained:

The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179

(1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

This Court has also advised that

" '[a]n order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33, [99 S.E.2d 1 (1957).]" Syllabus Point 5, in part, *Boggs v. Public Service Comm'n*, 154 W.Va. 146, 174 S.E.2d 331 (1970).

Syllabus Point 1, *Broadmoor/Timberline Apartments v. Public Service Commission of West Virginia*, 180 W.Va. 387, 376 S.E.2d 593 (1988).

## III.

### DISCUSSION

■ In this appeal, JUI contends that the Commission erred by rejecting the recommended decision of the administrative law judge which provided for a rate increase of 22.4 percent. Pursuant to W. Va.Code § 24–1–1(a)(4) (1986) (Repl.Vol.2008), the Commission must ensure that rates and charges for utility services are just and reasonable, are applied without unjust discrimination or preference, and are based primarily on the costs of providing these services. In order to determine just and reasonable rates, W. Va.Code § 24–2–3 (1983) (Repl.Vol. 2008) requires that "the [C]ommission shall investigate and review transactions between utilities and affiliates." The statute further mandates that "[t]he [C]ommission shall limit the total return of the utility to a level which, when considered with the level of profit or return the affiliate earns on transactions with the utility, is just and reasonable." *Id.* To that end, a public utility such as JUI which seeks a rate increase must file a tariff or application with the Commission

---

7. SES had been operating and maintaining JUI's systems pursuant to eight operation agreements; there was a separate operation agreement for each of JUI's water systems. *See* note 2, *supra.*

which sets forth, *inter alia,* the utility's revenues and operating expenses for the "test period." 150 C.S.R. § 2–9; 150 C.S.R. § 2–19. The "test period" is defined as "the most recent 12 month period ending on a calendar quarter[.]" 150 C.S.R. § 2–19.2. Based upon this information and various other factors, the Commission determines the appropriate amount of any rate increase.

In this case, the Commission reviewed the administrative law judge's decision and determined that the expenses recommended for JUI's insurance premiums, rent, rate case expense, and accumulated depreciation were not supported by the evidence. The Commission further determined that the administrative law judge had erred in not allocating an expense for Mr. Snyder's salary, but rather than adopting the salary request made by JUI, the Commission utilized the salary expense from JUI's previous rate case. JUI contends that the Commission failed to make its own independent findings of fact and conclusions of law on these issues, contrary to the applicable standard of review. JUI asserts that the Commission merely substituted its own decision and, thereby, abused its discretion in denying the rate adjustment recommended by the administrative law judge.

In response, the Commission says that it is not required to accept, in whole or in part, the administrative law judge's recommendation. The Commission points out that the Legislature conferred upon it "the authority and duty to enforce and regulate the practices, services and rates of public utilities[.]" W. Va.Code § 24–1–1(a). The Commission notes that while it has the power to designate other employees to conduct hearings, it retains that ultimate authority to render decisions. In that regard, W. Va.Code § 24–1–9(f) (2009) (Supp.2010) states that after the filing of a recommended decision, "[t]he commission, after review, upon the whole record, or as supplemented by a further hearing,

shall decide the matter in controversy and make appropriate order thereon." The Commission maintains that it entered proper findings of fact and conclusions of law on the rate issue. The Commission contends that its decision was based upon credible evidence in the record and that it followed the statutory mandate of W.Va.Code § 24–1–1(a)(4).

Likewise, the Intervenors [8] contend that the Commission made sufficient findings of fact and conclusions of law to support its decision. The Intervenors point out that the Commission's order is lengthy and provides a very detailed explanation regarding its decision to reject the 22.4 percent rate increase recommended by the administrative law judge and, instead, approve a rate increase of 4.4 percent Accordingly, the Intervenors ask this Court to affirm the Commission's decision.

Upon careful review of the record submitted to this Court and upon consideration of the applicable law, we find no clear error. The Commission's decision is not arbitrary or the result of a misapplication of legal principles. Rather, as set forth below, the Commission's order is supported by substantial evidence in the record.

As discussed, JUI asserts that the Commission erred by rejecting the administrative law judge's recommended expenses for JUI's insurance premiums, rent, rate case expense, and accumulated depreciation, and further erred by not accepting JUI's reported expense of $55,000.00 for Mr. Snyder's salary. With regard to the insurance premiums, JUI contends that the Commission improperly rejected the administrative law judge's recommendation to include an annual expense of $18,853.00 in calculating the rate. The Commission found, however, and the record shows, that JUI double booked the insurance premium—including it as an indirect cost from SES in the amount of $18,853.00 and then including the exact amount a second time in its Rule 42 exhibit.[9] At the hearing, JUI witness John Womack acknowledged

---

8. The Intervenors participating in this appeal are the home owners' associations of Breckenridge, Deerfield, Gap View, Meadowbrook, Sheridan Estates, and Briar Run; Citizens for Fair Water, Inc.; and individuals Kay Moore, Scott Tatina, and Regina Fite.

9. The Rule 42 exhibit is the information that must accompany all tariff filings and applications to change rates. *See* 150 C.S.R. § 2–19.

that it was appropriate to remove $18,853.00 from the Second General Insurance entry on line 17 of JUI's second revision of the indirect cost allocation from SES in order to prevent duplication of the insurance expense. Thus, contrary to JUI's assertion, JUI's expense for its insurance premium was included in the rate calculation.

Concerning the rent expense, JUI again contends that the evidence supported the administrative law judge's recommendation. The Commission concluded otherwise because the administrative law judge made her decision by "split[ting] the difference in the Staff recommended rent and the JUI requested rent." The Commission found that the recommendation of the PSC staff for the rent expense was the most credible; it was based on the owners' investment in the land and building, a return on that investment, and a reasonable allocation of the space needed in the building for JUI to operate.

With regard to the rate case expense, JUI sought to recover professional service expenses, as well as the expected cost of the rate case spread over five years at $81,886.00 per year. The administrative law judge allowed for recovery of both items; yet, the Commission denied recovery of the outside service expenses and adopted the PSC's staff allowance of $30,000.00, which the Commission noted was the rate case expense allowance that JUI sought in its original filing. The Commission explained that its policy does not allow companies to defer rate case expenses and amortize them. Rather, Commission policy is to allow for an increment for future rate case expense. Accordingly, the Commission determined that an ongoing expense of more than $81,000.00, as recommended by the administrative law judge, was unreasonable. The Commission concluded that the rate case expense suggested by PSC staff was proper and supported by the record.

Concerning accumulated depreciation, JUI states that it claims accelerated depreciation for income tax purposes in accordance with IRS regulations and records depreciation expense and accumulated depreciation on its books using this accelerated method. For ratemaking purposes, the Commission calculates depreciation expense using the straight line method following the Uniform System of Accounts for Water Utilities. Accelerated expense is usually more than straight line expense. In previous cases, JUI has adjusted its depreciation expense to conform with the Commission's mandated straight line method, but mistakenly had not adjusted its reserve, continuing to reserve accumulated depreciation under the accelerated method. In this case, JUI calculated both depreciation expense and depreciation reserve based on the straight line method. The administrative law judge accepted JUI's method of calculating accumulated depreciation. The Commission, however, rejected that decision. The Commission explained in its order:

> JUI's past booking of depreciation expenses presented financial results to the Commission that formed the basis for any review that the Commission may have been called upon to make regarding the financial condition of JUI.
>
> An adjustment that would look backward and reduce a utility rate base that had been previously reviewed and approved by the Commission is improper and cannot be sustained. The Commission believes that utility customers are entitled to the same certainty of prior approved rate base and that it is equally improper to increase a utility rate base that had been previously reviewed by the Commission.

Finally, as noted above, JUI claimed a salary expense of $55,000 for Mr. Snyder. PSC staff, apparently confused about how Mr. Snyder's salary was handled in the prior rate case, only recommended $15,000.00. The administrative law judge recommended no salary expense, reasoning that Mr. Snyder should not be considered an employee because he is the owner and receives profits from JUI. The Commission rejected the administrative law judge's reasoning but only allowed a salary expense of $40,000.00, the same amount approved in the previous rate case. The Commission concluded in its order:

> The [administrative law judge's] rationale for denying any amount of salary to Mr. Snyder on grounds that he will collect profits as owner is not reasonable because evidence presented in the case indicates that Mr. Snyder devotes considerable time and expertise to operating JUI.

Staff does not adequately support the proposed reduction of Mr. Snyder's salary from the amount allowed in the 2008 JUI rate case. Nor does JUI adequately support a proposed 38 percent increase in salary. The Commission will allow a direct salary level of $40,000 in the JUI cost of service.

(Citations to record omitted).

Given all the above, we must defer to the Commission's findings and affirm its decision. "We have previously held, in deference to the Commission's expertise, that this Court will not substitute our judgment for that of the Commission on controverted evidence. However, findings of fact made by the Commission will be overturned as clearly wrong when there is no substantial evidence to support them." *Chesapeake and Potomac Telephone Co. of West Virginia v. Public Service Commission of West Virginia,* 171 W.Va. 494, 498, 300 S.E.2d 607, 611 (1982) (citations omitted). While it is clear that the evidence in this case was controverted, it is equally clear that the Commission's decision was supported by substantial evidence.

## IV.

## CONCLUSION

For the reasons set forth above, the final order of the Commission entered on February 18, 2011, is affirmed.

Affirmed.