**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 11, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ALLIED WASTE SERVICES OF NORTH AMERICA, LLC,**
**DOING BUSINESS AS REPUBLIC SERVICES OF**
**WEST VIRGINIA,**
Petitioner

vs.)  No. 14-1136
　　　(Public Service Commission Nos. 13-1662-MC-30E through 13-1666-MC-30E
　　　　　　　　　　　and Nos. 13-1668-MC-30E through 13-1672-MC-30E)

**THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,**
Respondent


**MEMORANDUM DECISION**

The petitioner herein, Allied Waste Services of North America, LLC, doing business as Republic Services of West Virginia ("Allied"), by counsel Samuel F. Hanna, appeals from an order entered October 3, 2014, by the respondent herein, the Public Service Commission of West Virginia ("PSC"), by counsel Richard E. Hitt, Caryn Watson Short, and Linda S. Bouvette.  By that order, the PSC denied Allied's petition for reconsideration and upheld its November 14, 2013, order wherein the PSC (1) granted Allied's request for two Rule 30E surcharges, (2) required Allied to refund its customers the amounts it had over-collected under the two certificates receiving the Rule 30E surcharges, and (3) denied Allied's request for eight additional Rule 30E surcharges.  On appeal to this Court, Allied assigns error to (1) the PSC's decision to uphold its November 14, 2013, order and deny Allied's petition for reconsideration; (2) the PSC's ruling requiring Allied to refund monies to its customers; and (3) the PSC's decision to deny eight of Allied's Rule 30E surcharge requests.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we find no error in the PSC's rulings.  We therefore find that a memorandum decision affirming the PSC's October 3, 2014, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

1

Allied is a regulated public utility in West Virginia that collects and disposes of solid waste. In 2011, Allied purchased two solid waste collection certificates and the Suburban Sanitation Transfer Station ("STS") from its predecessor, Suburban Sanitation, Inc. ("Suburban"). Waste collected under these certificates was transported to STS and ultimately disposed of at Meadowfill Landfill ("Meadowfill"), which was owned by Allied's competitor, Waste Management of West Virginia, Inc. The PSC approved the transfer of these certificates from Suburban to Allied and also approved Allied's request to construct a new waste transfer station,[1] Mountaineer Transfer Station ("MTS"), to replace the outdated STS facility. As part of the PSC's approval of the construction of MTS, Allied agreed to maintain the same tariff rates as the former transfer station for a period of eighteen months. Upon the completion of MTS, Allied's collection vehicles transported waste that they collected to Allied's MTS facility, and Allied ultimately disposed of this waste at Short Creek Landfill ("Short Creek"), which also was owned by Allied.

Upon the expiration of the eighteen-month tariff maintenance period, Allied applied for a rate increase for MTS. The PSC approved the rate increase on October 3, 2013. Thereafter, Allied filed the instant ten applications requesting a Rule 30E surcharge based upon this rate increase. Pursuant to W. Va. Code § 24A-2-4a (1989) (Repl. Vol. 2013),

> [a]ny common carrier transporting solid waste in this State pursuant to authority granted under section five [§ 24A-2-5], article two, chapter twenty-four-a of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, may make application to the commission for approval of a rate surcharge to pass through any increase in the disposal rate charged by the landfill at which solid waste is disposed by the motor carrier, commonly known as the tip fee, to commercial and residential customers, including increases which are the direct result of fees, charges, taxes, or any other assessment imposed upon the landfill by a governmental body. The commission shall within fourteen days of receipt of said application notify the motor carrier of approval of the requested rate surcharge, or approval of a rate

---

[1]The PSC explains the purpose of a "transfer station" in its brief as follows:

> A transfer station is a solid waste facility where solid waste is unloaded from collection vehicles and briefly held while it is reloaded onto larger long-distance transport vehicles for shipment to landfills or other treatment or disposal facilities. By combining the loads of several individual waste collection trucks into a single shipment, communities can save money on the labor and operating costs of transporting the waste to a distant disposal site.

surcharge other than in the amount requested and the reason therefor. The effective date of the approved rate surcharge shall be the same date as the effective date of the increase in the tip fee to which the surcharge relates; except that in the event the application for approval of the rate surcharge is received by the commission more than sixty days after the effective date of the tip fee increase, then the effective date of the approved rate surcharge shall be the date said application was received by the commission.

The commission shall immediately promulgate emergency rules which set forth the procedures for the filing of the tip fee rate surcharge application. It is the purpose of this statute to provide an expedited process which will allow the subject motor carriers to pass through tip fee increases to all customers. Only that data necessary to review in accordance with this statute may be required by the commission to be submitted by the motor carrier.

In accordance with W. Va. Code § 24A-2-4a, the PSC promulgated W. Va. C.S.R. § 150-2-33.7 (2002) ("M.C. Tariff Rule 33.7"),[2] which describes the Rule 30E tariff process. In pertinent part, this rule provides:

The following accelerated procedure may be used by common carriers of solid waste applying for a rate surcharge because of an increase or decrease in the disposal rates, commonly known as tipping fees, charged by commercial solid waste facilities.

If any motor carrier of solid waste is required to pay higher tip fees as a result of increased commercial solid waste facility costs, or as a result of a rate filing pending before this Commission, or of any increases imposed by commercial solid waste facilities, such motor carrier may file an application . . . and amended tariffs with this Commission stating rates and charges designed to produce additional revenues sufficient, *but no more than sufficient to offset such increased costs for tip fees* and request an effective date for such amended rates not prior to the date it incurs said higher costs.

W. Va. C.S.R. §§ 150-2-33.7 to 33.7.a (emphasis added).

---

[2]Amendments to W. Va. C.S.R. § 150-2-33.7 became effective in January 2015. Because the events at issue in the case *sub judice* occurred before these amendments became effective, we will apply the version of the rule in effect at the relevant time to our determination of this matter.

By order entered November 14, 2013, the PSC granted two of Allied's requests for Rule 30E surcharges and denied eight of Allied's requests therefor. The PSC granted Allied's request for two Rule 30E surcharges for certificates that Allied had acquired from its predecessor, Suburban. When Suburban owned the referenced certificates, it had received Rule 30E surcharges thereon based upon an increase in the tip fee at STS. While the PSC determined that Allied was entitled to additional Rule 30E surcharges on said certificates, the PSC also determined that Allied was overcharging its customers because the rate it claimed to be paying MTS, *i.e.*, $58.35 per ton, was actually the rate charged by STS. Invoices submitted by Allied demonstrated that Allied actually was paying MTS, its own facility, only $49.50. Accordingly, the PSC determined that, pursuant to Rule 33.7.f,[3] Allied had failed to report its reduced costs as required by the Rule 30E surcharges applied to the certificates it had acquired from Suburban and that Allied had been overcharging its customers. Therefore, the PSC ordered Allied to refund the overcharge to its customers.

The PSC further denied Allied's request for eight additional Rule 30E surcharges because it determined that such request did not constitute the type of emergent rate increase request that is governed by Rule 30E. Rather, the PSC determined that because the cost increase was attributable not to a rate increase at the landfill Allied had been using, *i.e.*, Meadowfill, but a cost increase resulting from Allied's decision to use its own landfill, *i.e.*, Short Creek, the expedited procedure provided by W. Va. Code § 24A-2-4a did not apply. Instead, the PSC directed Allied to apply for a general rate increase to correspond with this increased cost through a general Rule 42 rate filing. *See generally* W. Va. C.S.R. § 150-2-19 (2002).

Allied then filed a petition for reconsideration. By order entered October 3, 2014, the PSC denied Allied's reconsideration petition and upheld its earlier rulings. From this adverse decision, Allied appeals to this Court.

On appeal to this Court, Allied requests us to review an order rendered by the PSC. We previously have held that

> """"an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles." *United Fuel Gas Company v. The Public Service Commission*, 143 W. Va. 33, 99 S.E.2d 1 (1957).' Syllabus Point 5, in part, *Boggs v. Public Service Comm'n*, 154 W. Va. 146, 174 S.E.2d 331

---

[3]See *infra* for the text of W. Va. C.S.R. § 150-2-33.7.f.

(1970)." Syllabus Point 1, *Broadmoor/Timberline Apartments v. Public Service Commission*, 180 W. Va. 387, 376 S.E.2d 593 (1988).

Syl. pt. 1, *Sexton v. Public Serv. Comm'n*, 188 W. Va. 305, 423 S.E.2d 914 (1992). More specifically, we have held that,

> [i]n reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

Syl. pt. 2, *Monongahela Power Co. v. Public Serv. Comm'n of West Virginia*, 166 W. Va. 423, 276 S.E.2d 179 (1981). Finally, we have summarized the *Monongahela Power* standard as follows:

> The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syl. pt. 1, *Central West Virginia Refuse, Inc. v. Public Serv. Comm'n of West Virginia*, 190 W. Va. 416, 438 S.E.2d 596 (1993). We will apply these tenets to our consideration of the assigned errors.

Allied first contends that the PSC erred by denying Allied's petition for reconsideration and upholding the PSC's November 14, 2013, order. Because we conclude in our ensuing discussion that the PSC's rulings were correct, we affirm the PSC's October

5

3, 2014, order denying Allied's reconsideration petition.

Allied next argues, with respect to the two approved Rule 30E surcharges, that the PSC erred by concluding that Allied failed to report a reduction in the rate it paid to MTS and by ordering Allied to refund the alleged overcharge to its customers. Whether Allied was required to report a reduction in the rates it paid to dispose of solid waste is governed by the legislative rules that address Rule 30E surcharge applications. We previously have held that,

> [o]nce a . . . regulation is legislatively approved, it has the force of a statute itself. Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious.

Syl. pt. 2, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996). We agree with Allied's contention that W. Va. Code § 24A-2-4a is silent as to a certificate holder's responsibility to report a reduction in the rates it pays to dispose of solid waste. However, we also agree with the PSC's position that, while the statute may remain silent on this point, the rules that the Legislature has directed the PSC to adopt to carry out the requirements of this statute make it abundantly clear that a certificate holder who has received Rule 30E relief is required to report a reduction in its costs that previously had supported its request for a Rule 30E surcharge.

Pursuant to W. Va. C.S.R. § 150-2-33.7.f,

> [*w*]*hen any motor carrier which has increased its rates pursuant to proceedings under this rule receives a reduction, or a refund, on the tip fees of any commercial solid waste facility whose rates and charges were the basis for the rate increase proceedings under this rule, it shall report promptly to this Commission the new reduced rates and charges so ordered and the annual savings in costs resulting to the motor carrier from such reduction* from the date said commercial solid waste facility increased its rates under this rule, or the amount of refund and the period to which it relates. Whereupon, this Commission may conduct an investigation to determine:
>
> 1. The amount of the reduction;
>
> 2. The effective date of the reduction;
>
> 3. The manner in which, and the extent to which, the motor

6

carrier shall make refunds to its customers as a result of any refund or reduction received from a commercial solid waste facility to which it transports solid waste; and

4. The manner in which, and the extent to which, the motor carrier shall amend or adjust its rates to give effect to such reduction.

(Emphasis added). The rules further state that "[a]ny motor carrier which invokes the proceedings provided under 13.4.a.,[4] hereof shall be deemed to have consented in advance to the proceedings under Rule 13.4.f.[5]" W. Va. C.S.R. § 150-2-33.7.g (footnotes added). Therefore, it is clear that a motor carrier receiving approval for a Rule 30E surcharge has a corresponding duty to notify the PSC if the rates upon which it based its request are subsequently reduced and that, by applying for Rule 30E relief in the first instance, the motor carrier has agreed to comply with the reporting requirements of W. Va. C.S.R. § 150-2-33.7.f.

Moreover, the PSC has not required Allied to submit any documentary evidence above that required by statute. W. Va. Code § 24A-2-4a requires that "[o]nly that data necessary to review in accordance with this statute may be required by the commission to be submitted by the motor carrier." The corresponding rule clarifies this requirement by providing that an applicant for a Rule 30E surcharge is required to submit copies of its recent invoices to support its request for the rate increase: "The motor carrier shall file evidence of past solid waste disposal tip fees in the form of copies of bills rendered by the solid waste disposal facility. The minimum data requirement in support of this filing shall be copies of the most recent six (6) months' disposal bills." W. Va. C.S.R. § 150-2-33.7.d. The PSC considered this evidence and determined that the rate Allied claimed to have been paying for MTS services was not the same as the rate reflected by Allied's invoices from MTS. Thus, the PSC properly based its decision upon the necessary data required to accompany Allied's Rule 30E surcharge applications and did not require Allied to submit any additional documentary evidence.

Finally, the PSC correctly required Allied to refund its customers the overcharges it

---

[4]It is apparent that this reference is erroneous and should refer to W. Va. C.S.R. § 150-2-33.7.a. *See* W. Va. C.S.R. § 150-2-34.7.g (2015) ("Any motor carrier which invokes the proceedings provided under Tariff Rule 34.7.a., hereof shall be deemed to have consented in advance to the proceedings under Tariff Rule 34.7.f.").

[5]*See supra* note 4.

had collected in conjunction with its approval of Allied's two Rule 30E surcharges. W. Va. C.S.R. § 150-2-33.7.e specifically directs that,

> [b]efore placing rates into effect pursuant to this procedure, the motor carrier shall enter into an agreement that, if it shall receive a refund or reduction of all or part of the higher tip fees upon which its higher rates and charges are based, placed into effect as authorized by this procedure, it will comply with such order as the commission shall thereafter make in reference to such refund or tip fee reduction so received.

Thus, as with the applicant's initial consent to be bound by the reduced fee reporting requirement, *see* W. Va. C.S.R. § 150-2-33.7.g, this provision imposes a similar obligation upon applicants to be bound by the PSC's determination of whether a refund is due and the procedure for implementing the same. Therefore, we find that, by virtue of Allied's application for Rule 30E surcharges, Allied has consented to the PSC's determination that Allied has received a reduction in the rates to which the Rule 30E surcharges apply, and, thus, Allied owes a refund to its customers to offset the resultant overcharge. Accordingly, we affirm the PSC's rulings ordering Allied to refund the subject overcharges to its customers.

Allied lastly contends that the PSC erred by denying its remaining eight applications for Rule 30E surcharges. Whether Allied is entitled to the Rule 30E surcharges it has requested is governed by the applicable statutory law and the legislative rules implementing these statutes. Therefore, our determination of the correctness of the PSC's decision in denying eight of Allied's Rule 30E surcharge applications necessarily must also consider the governing legislative language and the Legislature's intent in enacting and approving thereof. *See* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."); Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). *See also* Syl. pt. 4, *Security Nat'l Bank & Trust Co. v. First West Virginia Bancorp., Inc.*, 166 W. Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.").

W. Va. Code § 24A-2-4a specifically states that "[i]t is the purpose of this statute to

provide an expedited process which will allow the subject motor carriers to pass through tip fee increases to all customers." Such expedited process is available when there is "any increase in the disposal rate charged by the landfill at which solid waste is disposed by the motor carrier." *Id.* The PSC correctly noted in its order that the increase sought to be recouped by Allied was not attributable to an increase at the landfill it customarily used, *i.e.*, Short Creek, but was due to Allied's decision to stop using the landfill it previously had used when it acquired its certificates, *i.e.*, Meadowfill, and to start using its own landfill, *i.e.*, Short Creek, once it had completed construction of its MTS facility. While Allied may be entitled to a rate increase to account for its additional expenses in using the Short Creek Landfill, Allied has not demonstrated that its additional costs are due to increased rates at Short Creek. Rather, Allied's increased costs appear to be the result of its decision to change from its competitor's landfill to its own landfill. Again, this additional expense may very well justify a rate increase, but it is not the type of cost incursion contemplated or governed by W. Va. Code § 24A-2-4a. Accordingly, we find that the PSC correctly denied Allied's eight additional requests for Rule 30E surcharges.

For the foregoing reasons, we affirm the PSC's October 3, 2014, order.

Affirmed.


**ISSUED:**     March 11, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II